HENRY F. TURNER, Judge pro tern.
The plaintiff in this case, Dillard University, is a nonprofit corporation organized' under the laws of the State of Louisiana, whose principal business is the education of the colored youth of the surrounding-area. They own and operate as a subsidiary, Flint-Goodridge Hospital, which enjoys a charitable status in the City of New Orleans. The hospital’s principal interest is caring for colored patients. The facili *222 ties of this hospital became inadequate, and in the early part of 1958 the officers of the plaintiff embarked upon an expansion program in which they undertook to enlarge and modernize the hospital at a cost of something in excess of a million dollars. Of this amount, the Federal government under the Hill-Burton Act was to furnish about one-half, and the balance was to be raised by the plaintiff through public solicitations and donations. The defendants in the case are Local 1419 of the International Longshoremen’s Association (Independent) and its present president, Clarence Henry. This case has previously been before this court on technical pleadings and is reported in 144 So.2d 710.
The suit is for $8,400.00 claimed to be the balance due by the defendants on a pledge signed by Clarence Henry on a pledge card of the Flint-Goodridge Hospital Expansion Fund on March 13, 1958. This card is reproduced in page 712 of 144 So.2d, except that in the boxes 1959 and 1960, the dollar sign was omitted, and on the original card filed in evidence, the address of 518 South Rampart was stricken and a pencil address of 2700 South Claiborne was added. The plaintiff claims that of the $10,000.00 ■subscribed a credit of $1,600.00 has been applied, leaving the balance due of $8,400.00. The lower court, after hearing the evidence, ■gave judgment in favor of plaintiff against Local 1419 of the International Longshoremen’s Association and dismissed the suit as to Clarence Henry. From this judgment the defendant Local 1419 has appealed to this court.
We find no difficulty in reaching the conclusion that a pledge of this nature is valid and binding, Louisiana College v. Keller, 10 La. 164. The defense made, however, in this case is that there was no pledge in the first instance and that if the court finds that in fact a pledge of $10,000.00 was made, it was made without authority from Local 1419 of the International Longshoremen’s Association and is therefore not binding on it.
The facts in the case show that Clarence Henry, who apparently is a leader among the Negroes, was invited to attend a meeting for the purpose of discussing the fund-raising campaign for the hospital expansion program contemplated by the plaintiff. Henry attended this meeting and showed keen interest in the project. He was then visited at his office in the Local’s headquarters by a team of fund raisers and there signed the card offered in evidence as P-1, which forms the basis of this law suit. Clarence Henry specifically denies that he every intended to bind himself individually, and the lower court so found and dismissed that claim so that any further discussion as to Henry’s individual liability is unnecessary. He further denied that he had the authority or that he ever intended to sign on behalf of the Local and bind them for the payment of $10,000.00. He said he signed the card with the understanding that he was to lend his efforts and use his influence among his contacts and members of his Union and the people with whom they worked and did business to raise that amount of money. He testified that the Union was not in a position to make that type of a donation and that the Union itself was in the process of borrowing $300,000.00 for a building program of their own.
We find from the record that as a result of his efforts several thousand dollars was raised for this fund. Henry kept no record, however, of the amount that was coming in as a result of letters he mailed to steamship companies, shippers, wholesalers, and other businesses with which he had a personal contact. It appears to us that if Henry had intended and considered that his Union owed the $10,000.00, he certainly would have kept some record of the amount coming in as a result of his efforts and would have claimed credit therefor. He even made a personal donation of $150.00 which was not credited to the Local’s account.
While the record, unfortunately, does not disclose the comparable net worth of the various locals in New Orleans, it does show *223 that Local 1418 of ILA just across the street from Local 1419 gave only $200.00 to this fund. Of course, that is quite a difference from $10,000.00, but we are not prepared to say the two donations are not comparable, because we do not know. But it is a point that we could not help but comment on.
The defendant introduced in evidence two newspaper clippings from the Louisiana Weekly and the Pittsburgh Courier with pictures showing Mr. Henry and a Mr. Gayle, who represented the hospital expansion fund, and it is stated under the picture that Local 1419 had GIVEN $10,000.00— not subscribed, not pledged, but donated or given that amount of money. This is important for the reason that plaintiff claims that the defedant local is estopped because of these pictures from claiming that Clarence Henry exceeded his authority and bound the Union for this pledge or subscription of $10,000.00. This local, a labor union, is made up of Negro longshoremen laborers, and, of course, the Union’s business is run by the officers and president.
The plaintiff argues that because of the widespread publicity given by these newspaper articles and the fact that the defendants took no action to repudiate them within a reasonable time, they acquiesced in the reported action.
There is no evidence that Clarence Henry or any member of the defendant association ever saw or read the Louisiana Weekly or the Pittsburgh Courier. We feel certain, however, that Henry saw and read one or both of the articles.
Conceding, however, that some of the members did see the picture and article in one of the newspapers, their course of action would have been to inquire of their president as to the meaning of the article. He would no doubt have assured them that the Local was not obligated and would have given the same explanation he gave on the trial of this case.
The plaintiff argues that before signing the pledge card Clarence Henry stated that he should call in his executive committee to get their approval and that he did so. The evidence shows that he called in one or two men, but it is not proved that they were on the executive committee or that they constituted a quorum or that they were authorized to bind the Local for a gift of this-size.
The Constitution and By-laws of the Union were introduced and offered in evidence, to which an objection was made. The court ruled that unless it was certified to as being a copy of the original the objection would be maintained, and counsel for the Union at that time abandoned his effort to introduce the Constitution and By-laws. However, the Constitution and By-laws appear in the record, and on the back inside of the folder appears a certification which was apparently overlooked by counsel, and the Constitution should have been received in evidence. As counsel for defendants stated, however, at the conclusion of the trial when the court asked him what he was going to do about the Constitution, counsel replied that Clarence Henry had testified as to his lack of authority and that was all that was necessary, and that would otherwise have been shown by introduction of the Constitution. Counsel for the plaintiff complained that Henry’s'testimony in this regard is uncorroborated,, and from the Constitution it appears that all-expenditures and instruments for the payment of money must be ordered by the Association. It appears to be a logical rule-to prohibit an officer or group of officers of a union or association of this nature from giving away large amounts of money. Not' to do so would lead to unbridled vice and corruption in the management and affairs of these unions.
The law is well settled that an unincorporated association cannot dispose of its real estate without a resolution of the membership adopted in accordance with the association’s Constitution and By-laws. We cite Rock Zion Baptist Church v. Johnson, La.App., 47 So.2d 397. It would seem of greater importance that they could not give *224 away the association’s money, regardless of the worthiness of the cause.
There is some testimony in the record that previously Clarence Henry had signed pledges for the Local, to the Community Chest and the United Fund, hut the amount of such pledges is not shown, and it is not shown whether these pledges were ever paid.
Clarence Henry testified that the purpose of signing this alleged $10,000.00 pledge or subscription was a propaganda gimmick to lead others on and, in effect, up their sights from lower donations to higher donations, which is reasonable psychology. When we studied the pledge card in connection with the testimony and exhibits filed herein, we were inclined to believe this is exactly what happened. The pledge card has three boxes, one each for the dates 1958, 1959, and 1960, supposedly for a breakdown as to the amounts to be paid during those years. In the first box, there appears the pencil notation “May”. The other two boxes appear blank. Then under the boxes appears payable: monthly, small box; quarterly, another box; semi-annually, another box; annually, another box, all blank. Then under that appears “Payment to begin-”, so from the card there is no date, time limit, or method set as to payment; and from the record we are unable to find that any demand was ever made on this defendant prior to the filing of the law suit November 28, 1962. The petition alleges amicable demand in vain, and we assume that counsel did probably make some demand before filing the suit, but it strikes us as being rather strange that with Clarence Henry actively collecting and forwarding contributions to the fund at regular intervals, nobody connected with the fund-raising campaign would have brought up or mentioned the fact that no payment had been made on his •Union’s pledge. For these reasons, we are of the opinion that trial court erred in holding Local 1419 ILA liable for the $8,400.00. If $10,000.00 was the Union’s pledge, why would they give them credit for $1,600.00, admittedly paid by other people, or why would they not give them credit for other amounts collected of the same nature as the $1,600.00 that they did credit which was testified to as having been collected by Clarence Henry’s solicitations and efforts?
The judgment of the District Court is, therefore, reversed and plaintiff’s suit dismissed at his costs.
Reversed and rendered.